## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Mar 11 2015, 10:04 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Daniel L. Askren
O'Connor and Askren Law Office
Attica, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of: D.R., L.R. & S.R. (Minor Children),

A.R. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

March 11, 2015

Court of Appeals Case No. 23A01-1409-JT-420

Appeal from the Fountain Circuit Court.
The Honorable Stephanie S. Campbell, Judge Pro Tempore.
The Honorable Susan Orr Henderson, Judge.
Cause No. 23C01-1405-JT-82
         23C01-1405-JT-83
         23C01-1405-JT-84

**Baker, Judge.**

[1] A.R. (Father) appeals the juvenile court's order terminating the parent-child relationship between Father and his three children. Father argues that there is insufficient evidence supporting the juvenile court's conclusion that there was a reasonable probability that the conditions that led to the children's removal from his care would not be remedied. Finding sufficient evidence, we affirm.

## Facts

[2] Father and L.H. (Mother)[1] had three children together: D.R., born December 30, 2004, L.R., born April 16, 2006, and S.R., born December 31, 2008. This family has had multiple contacts with the Department of Child Services (DCS) in the past. In February 2005, DCS substantiated allegations of medical neglect regarding D.R. In December 2005, DCS substantiated allegations that D.R. was endangered by drug use. In March 2010, DCS substantiated allegations of endangerment regarding all three children. The 2010 substantiation led to a case in which all three children were found to be children in need of services (CHINS). At that time, Father acknowledged that his criminal history and substance abuse issues had led to the children's removal. The CHINS case closed in June 2011, when the children were returned to the parents' care.

[3] On February 19, 2013, DCS filed a petition alleging that the children were CHINS based on allegations that on February 14, law enforcement had found heroin and drug paraphernalia in the family's residence. Additionally, the

---

[1] Mother voluntarily relinquished her parental rights to the children and is not participating in this appeal.

children reported that they had not eaten on February 14 because the parents had forgotten to feed them and that they had not bathed in awhile. The children were removed from the parents' care and placed in foster care. At the time of removal, Father tested positive for marijuana and heroin. On April 22, 2013, the juvenile court found the children to be CHINS based upon the following admissions made by the parents: (1) the utilities were shut off at the residence; (2) when law enforcement performed a probation check on another adult living in the home, they discovered a controlled substance and paraphernalia in the home; and (3) law enforcement reported that Father appeared to be under the influence.

[4] Between the children's removal in February 2013 and April 2013, the parents had regular supervised visits with the children. The visitation supervisor expressed concerns about a number of behaviors exhibited by Father: (1) having inappropriate conversations with the children about the CHINS case; (2) arguing with Mother in front of the children; (3) failing to intervene when there were safety issues regarding the children; (4) using his phone during visits; and (5) not using a consistent and predictable system to discipline the children. During that time, DCS offered services, including counseling and substance abuse treatment, to Father, but he did not participate in those services.

[5] On or about April 26, 2013, Father left Indiana without informing DCS. He was on the run from law enforcement and ended up in Arizona for approximately three weeks. On May 1, 2013, an arrest warrant was issued for Father, and he was eventually arrested in Arizona and returned to Indiana. He

has been incarcerated since that time. On April 18, 2014, Father was convicted of class B felony burglary and class D felony theft. He was sentenced to eight years imprisonment, with four years suspended. His earliest possible release date is May 2017.

[6] On May 9, 2013, the juvenile court entered a dispositional order. Inasmuch as Father was incarcerated at that time, the court ordered that DCS did not have to provide services to Father until he was released from incarceration and in a position to participate with services.

[7] After Father's incarceration, he had phone contact with the children twice a week. The phone calls occurred during Mother's supervised visits with the children. At some point in time, Mother's visits were suspended because of a positive drug screen and the voluntary relinquishment of her parental rights. Father's phone contact with the children ended at that time, and he never requested that it begin again. He testified that he had written to the children "a few times," tr. p. 33, but the family case manager (FCM) did not recall Father sending her any letters to pass on to the children, id. at 55.

[8] In addition to the convictions he amassed during the instant CHINS case, Father has prior convictions for possession of controlled substances, dealing in marijuana, public intoxication, battery, and residential entry. He admits that he has a substance abuse problem. During the 2010-11 CHINS case, Father received substance abuse treatment and parenting classes. He continued using

illegal substances, however, inasmuch as he tested positive for heroin and marijuana in February 2013.

[9] DCS filed a petition to terminate the parent-child relationship between Father and his children, and the juvenile court held an evidentiary hearing on the petition on July 29, 2014. At the time of the termination hearing, Father had just begun a twelve-step program, which lasts seven to eight months, in the Department of Correction.

[10] At the termination hearing, evidence was introduced that D.R. and L.R. had undergone a sexual abuse assessment. The assessment indicated that the children had been the victims of sexual abuse by a half-sibling. As a result of that abuse, the children had sexually reactive behaviors—they acted out sexually and perpetrated on other children. Their therapist recommended that they sleep separately and have no unsupervised contact with each other. All three children were receiving individual therapy, and D.R. and L.R. were also receiving counseling for their sexually reactive behaviors.

[11] The Guardian ad Litem (GAL), the children's service providers, and the FCM testified that termination was in the children's best interest. Both the GAL and FCM were concerned about the risk for drug exposure when in Father's care, the lack of structure and routine when in Father's care, and the need for two of the children to have ongoing therapy as a result of sexual molestation that occurred when in Father's care. All three children were placed in the same preadoptive foster home, where they were thriving and progressing. The

juvenile court ordered that the parent-child relationship be terminated. Father now appeals.

# Discussion and Decision

## I. Standard of Review

[12] Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[13] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A)    that one (1) of the following is true:

> (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> (ii)     A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>
> (iii)     The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B)     that one (1) of the following is true:
>
> (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii)     There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii)     The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C)     that termination is in the best interests of the child; and
>
> (D)     that there is a satisfactory plan for the care and treatment of the child.
>
> DCS must prove the alleged circumstances by clear and convincing evidence.

*K.T.K.*, 989 N.E.2d at 1230.

[14]    In this case, the juvenile court based its termination order, in part, upon a finding that there is a reasonable probability that the conditions that resulted in

the children's removal will not be remedied. That is the sole finding challenged by Father in this appeal.[2]

## II. Conditions Resulting in Removal

[15] In considering this issue, a juvenile court must judge a parent's fitness to care for his or her children at the time of the termination hearing. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). The juvenile court may, however, take into consideration the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the children. *Id.* Among other things, a juvenile court may consider a parent's criminal history, substance abuse history, and lack of adequate housing. *McBride v. Monroe Cnty. Office of Family and Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

[16] In this case, the children were removed from Father's care because heroin and paraphernalia were found in the home where they were staying, children's basic needs, such as nutrition and hygiene, were not being met, and Father tested positive for heroin and marijuana at the time of removal. Prior to the instant CHINS case, the undisputed evidence regarding Father's habitual patterns of conduct is as follows:

---

[2] We note that the statute is drafted in the disjunctive, meaning that DCS need only prove either that the conditions that led to the children's removal would not be remedied OR that continuation of the parent-child relationship posed a threat to the children's well-being. In other words, even if there were insufficient evidence supporting the former conclusion, the termination could still be affirmed if there were sufficient evidence supporting the latter conclusion. Inasmuch as the juvenile court in this case based the termination only on the former conclusion, however, we will address Father's argument on appeal.

- Father has two prior substantiations for neglect. The children have been adjudicated CHINS on one prior occasion, resulting in part from Father's substance abuse. Father participated in substance abuse treatment in that CHINS case.
- Father has prior criminal history, including convictions for possession of controlled substances, dealing in marijuana, public intoxication, battery, and residential entry.

[17] In the course of the instant CHINS case, the record reveals the following evidence regarding Father:

- Notwithstanding his prior substance abuse treatment, Father tested positive for heroin and marijuana when the children were removed.
- DCS offered services to Father in this case before he was incarcerated but he did not participate.
- Before Father went on the run, he had supervised visits with the children. The visitation supervisor had numerous concerns about Father's behavior during those visits.
- Father absconded from the State to evade law enforcement and has been incarcerated since his Arizona arrest in the spring of 2013.
- During this CHINS case, Father was convicted of class B felony robbery and class D felony theft. His earliest possible release date is in May 2017.
- While incarcerated, Father had twice weekly phone calls with the children during Mother's supervised visits. When Mother relinquished her parental rights, the phone calls stopped, and Father never requested that they continue.
- At some point while in the care of their parents, two of the children were sexually molested by a half-sibling. They continue to exhibit sexually reactive behavior and will need ongoing services as a result.

[18] Father argues that this case is similar to *In re M.W.*, in which this Court held that termination was inappropriate where the father was set to be released from incarceration three months after the termination hearing and had completed all

but one requirement of the dispositional plan. 943 N.E.2d 848, 856 (Ind. Ct. App. 2011). We disagree and find *M.W.* to be easily distinguishable from this case.

[19] Here, Father's earliest possible release date is *three years* from the date of the termination hearing. Moreover, before his incarceration, Father had not participated in services offered by DCS, and he had only just begun a seven-month twelve-step program in the DOC at the time of the termination hearing. He did not object when his phone contact with the children ceased. Furthermore, Father has had multiple prior contacts with DCS, including a CHINS case in which he participated in multiple services. Notwithstanding prior substance abuse treatment and counseling, he has continued to use illegal substances—while caring for his children, no less—and engage in criminal activity.

[20] Given this record, we find that the juvenile court did not err by finding that DCS proved by clear and convincing evidence that there is a reasonable probability that the conditions that led to the children's removal from Father's care would not be remedied. Therefore, we find that the juvenile court did not err by terminating the parent-child relationship.

[21] The judgment of the juvenile court is affirmed.

Vaidik, C.J., and Riley, J., concur.